# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reed Tso, | No. CV-17-08183-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

At issue is Plaintiff's Motion for Summary Judgment (Doc. 31, Mot.), to which Defendant, Office of Navajo and Hopi Indian Relocation ("ONHIR"), an independent federal agency, filed a Response, Cross-Motion for Summary Judgment, and Objection to Extra-Record Documents (Doc. 35, Cross-Mot.) For the reasons that follow, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Cross-Motion for Summary Judgment.

**I.    BACKGROUND**

Plaintiff Reed Tso is an enrolled member of the Navajo Nation who applied to the ONHIR for relocation benefits under the Navajo and Hopi Land Settlement Act of 1974 ("Settlement Act"), 25 U.S.C. § 640d *et seq.*, on August 31, 2010. (Doc. 18, R. at 37–42.) Plaintiff's application was denied by ONHIR by letter dated July 10, 2014, because ONHIR found that, on December 22, 1974, he was not a legal resident of the Joint Use Area ("JUA") partitioned to the Hopi Tribe as required by the Settlement Act. (R. at 48–51.) According to the regulations, an applicant must establish his legal residency on

December 22, 1974, the date of enactment of the Settlement Act. 25 C.F.R. § 700.147. Plaintiff timely requested a hearing, which was held on May 20, 2016, in front of an Independent Hearing Officer ("IHO"). (R. at 56, 73, 82.)

On July 29, 2016, the IHO issued a decision denying Plaintiff's application for relocation benefits. (R. at 179–85.) The IHO concluded that, on December 22, 1974, Plaintiff was not a legal resident of Blue Canyon, an area within the Hopi Partition Land, but rather a legal resident of the State of California. (R. at 182–83, 184.) And prior to moving to California to attend Chabot College in August 1974, Plaintiff was a legal resident of Tuba City, Arizona, making Plaintiff ineligible for relocation benefits. (R. at 182–83.)

The IHO considered the following facts in concluding that Plaintiff was not a legal resident of Blue Canyon on December 22, 1974: Plaintiff "regarded Tuba City as his 'hometown;'" Plaintiff "joined the Tuba City Chapter in 1973;" Plaintiff married a woman from Tuba City and the couple's children were born there; Plaintiff "asserted that Blue Canyon was a summer home;" Plaintiff "testified that the livestock [in Blue Canyon] were cared for by his uncles;" and Plaintiff made "one return visit in December 1974" to Tuba City and Blue Canyon, each for a brief period of time. (R. at 183–84.) The IHO also concluded that any visits to the Blue Canyon area in 1973 or 1974 were "primarily social and incidental to [Plaintiff's] real residence in Tuba City until he moved to California in the fall of 1974." (R. at 184.) The IHO concluded that the testimony of Plaintiff and his two siblings about Plaintiff's "extensive visitation to Blue Canyon while applicant was away at college [are] neither believable or credible." (R. at 184.) The IHO, therefore, found that Plaintiff did not establish having substantial and recurring contacts with the Blue Canyon area while he was away at college in California. (R. at 184.)

On August 12, 2017, Plaintiff filed the instant action for judicial review pursuant to the Settlement Act, 25 U.S.C. § 640d-14(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.* (Doc. 1, Compl.) Plaintiff moved for Summary Judgment, and Defendant responded with a Cross-Motion for Summary Judgment.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987).

When reviewing agency action under the APA, there are no disputed facts that a district court must resolve. *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Instead, the administrative agency—not the court—is the fact-finder. *Id*. When reviewing agency action, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. Thus, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id*. at 770. For judicial review of agency action, the court's focal point is the administrative record already in existence. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (holding that the administrative record may require supplementation by the reviewing court if it is incomplete). As a general rule, the court cannot review an issue that the plaintiff failed to raise before the administrative tribunal. *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985).

### B. Judicial Review of an Agency Decision

Although judicial review under the APA must be searching and careful, a court's role remains narrow. *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir. 1993). Under this narrow and deferential standard, the court cannot substitute its judgment over the agency's, especially where the "challenged decision implicates substantial agency expertise." *Ninilchik Traditional Council v. U.S.*, 227 F.3d 1186, 1194 (9th Cir. 2000). When reviewing agency action under the APA, the court may reverse or set aside the action

if the court finds that that agency action was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence[.]" 5 U.S.C. § 706(2)(a), (e); *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

A court will find an agency's decision arbitrary and capricious "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217, 1224 (9th Cir. 2011). ONHIR's action will be upheld "if the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id*.

Alternatively, a court may overturn an agency decision under the abuse of discretion standard if the IHO failed to justify his or her decision. "[A]n agency must cogently explain why it has exercised its discretion in a given manner[.]" *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. 29, 48 (1983). The agency must provide findings and an analysis justifying the decision made. *Id*. (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167 (1962)). Agency decisions must also be supported by substantial evidence. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *De la Fuente v. Fed. Deposit Ins. Corp.*, 332 F.3d 1208, 1220 (9th Cir. 2003) (citation omitted).

In other words, an agency's decision need only be "a reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989). The IHO's decision must be upheld "[w]here evidence is susceptible of more than one rational interpretation[.]" *Sample v. Scheweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

## C. Relocation Benefits Under the Settlement Act

In 1974, Congress enacted the Navajo and Hopi Land Settlement Act, Pub. L. No. 93-531, § 12, 88 Stat. 1718, which authorized the partition of the Joint Use Area between the Hopi and the Navajo Tribes, resulting in the Hopi Partition Land ("HPL") and the Navajo Partition Land ("NPL"). 25 U.S.C. § 640d *et seq*. The Settlement Act ordered members from these two tribes to relocate to the land partitioned to their respective tribal affiliation. *Id*. § 640d-13(a). The Act also authorized and created a benefit program to compensate those people who were forced to abandon their homes and relocate to a partitioned area. 25 U.S.C. § 640d-13(a), 14(b)(1)–(2). The Act conferred jurisdiction to the United States District Court for the District of Arizona to review appeals from any eligibility determinations made by the independent agency, now known as ONHIR, created by the Act to compensate relocated people. 25 U.S.C. § 640d-14.

An applicant for relocation benefits bears the burden of establishing that he or she was a head of household as of July 7, 1986, 25 C.F.R. § 700.147, and was a legal resident of the Hopi Partitioned Land ("HPL") on December 22, 1974—the date of the Settlement Act's enactment, *id*. § 700.97.[1] A 1984 change to the Agency's regulations defines the term "residence" as the "legal meaning . . . which requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22, 277–78 (May 29, 1984).[2] The final rule provides a list of factors that ONHIR may consider when assessing legal residency, including: ownership of livestock, ownership of improvements, grazing permits, home-site leases, public health records, medical and hospital records, school

---

[1] Plaintiff's status as head of household is not at issue here and will not be discussed further. (R. at 85, 151, 165.)

[2] The Court will not *sua sponte* review issues not raised in the administrative proceedings. 5 U.S.C. § 704; *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985). However, the Court notes that the regulation's adoption of a legal residency test may not directly further the language of the Settlement Act and Congress' intent, as the Congressional Record indicates that Congress recognized that the Navajo people traditionally were and are "nomadic," typically having more than one "Hogan" or homesite location used seasonally. *See Partition of Navajo and Hopi 1882 Reservation: Hearings on H.R. 5647, H.R. 7679 and H.R. 7716 Before the Subcomm. on Indian Affairs of the H. Comm. on Interior and Insular Affairs*, 93rd Cong. 30, 40, 43 (1978).

1 records, employment records, mailing address records, bank records, drivers license records, tribal and county voting records, homeownership or rental off the disputed area, information obtained by Certification Field Investigation, Social Security Administration records, marital records, records of birth, and the Joint Use Roster, also known as the BIA Enumeration Roster. 49 Fed. Reg. 22,278 (May 29, 1984).

If Plaintiff left the HPL temporarily to pursue higher education or employment, Plaintiff can still establish his legal residency by showing substantial and recurring contacts with his home within the HPL. *See Akee v. Office of Navajo & Hopi Indian Relocation*, 907 F.Supp. 315 (D. Ariz. 1995) (using evidence of substantial, recurring contacts combined with manifestations of intent to maintain residence within the HPL to affirm ONHIR's decision denial of application for relocation benefits). The Court refers to this as the "temporarily away" exception.

### III. ANALYSIS

Plaintiff raises two central arguments for the court's consideration: (1) The IHO failed to properly apply the "temporarily away" exception in determining that Plaintiff was not a legal resident of Blue Canyon; and (2) the IHO erred in discrediting the testimony of all three witnesses. The Plaintiff contends that ONHIR's denial of relocation benefits is therefore arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence. (Compl. at 4, 8.)

Defendant argues that the decision is supported by substantial evidence, and that the IHO properly followed applicable law and precedent. (Cross-Mot. at 4.) Defendant also asks the Court to review only the record and not the extra-record documents filed by Plaintiff as Exhibits 1–4 in his Motion for Summary Judgment and Exhibits 1–3 in his Reply to Defendant's Response ("Plaintiff's Exhibits"). (Cross-Mot. at 14; Doc. 39 at 5-6.) For the reasons explained below, the Court finds that the ONHIR did not err in denying Plaintiff's benefits.

### A. The IHO Did Not Err in Finding that Plaintiff Failed to Satisfy the Legal Residency Requirement

Plaintiff contends he was a legal resident of Blue Canyon on December 22, 1974, despite physically residing in Oakland, California while attending Chabot College at that time. (Compl. ¶ 28; Mot. at 11.) Plaintiff argues that had the IHO properly applied the "temporarily away" exception for college, the IHO would have found him a legal resident of the HPL. (Compl. ¶ 32; Mot. at 13-14.) Defendant maintains that the IHO did not err in finding that Plaintiff was not a legal resident of Blue Canyon, but a legal resident of Tuba City prior to leaving the Navajo Nation to attend college in California. (Cross-Mot. at 2.)

The IHO based his decision on the relevant factors listed in ONHIR's final rule and explained a rational connection between those factors and his decision. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. The Court is bound by the regulation provision that states a residence for the purposes of the Settlement Act must be a "legal residence." *See* 25 C.F.R. § 700.97(a). Thus, "residence" is defined by its "legal meaning[,]" which requires ONHIR and the IHO to examine whether Plaintiff had an intent to reside in Blue Canyon and if so, whether Plaintiff exhibited "manifestations of that intent" to reside in Blue Canyon on December 22, 1974. 49 Fed. Reg. 22277–78. The regulation provides a list of several factors that the agency may consider in determining whether Plaintiff manifested an "intent to reside." *Id.* at 22278.[3] Considering the record in full, the IHO properly applied the legal standards, considered the relevant facts, and provided an explanation that articulated a rational connection between the relevant facts and his decision.

---

[3] In part, the IHO relied on the BIA Enumeration Roster to find that Plaintiff was not a resident of Blue Canyon. Though the Court finds reliance on this evidence to be improper, the IHO relied on other evidence sufficient to reach his finding that Plaintiff was not a resident. The Court notes that it would be logical to conclude that Plaintiff's name would not appear on the Roster, even if he were a resident of Blue Canyon, because Plaintiff was away at college from 1971 to 1976 when the list was made. Further, the reliability of the Roster appears questionable. *See Walker*, 728 F.2d at 1279 ("The Commission has always taken the position that the enumeration list is not conclusive as to eligibility").

At the hearing, Plaintiff testified that he "always considered Tuba City his home." (R. at 98.) The record also reflects that Plaintiff's only Chapter House registration and voting history were in Tuba City. (R. at 95.) The IHO also considered that Plaintiff's children were born in Tuba City and that his wife is from Tuba City. (R. at 183.) The IHO also found that any livestock, regardless of ownership, were cared for by Plaintiff's uncles. (R. 184.) The IHO concluded that, based on these facts, any visits to Blue Canyon were "social and incidental" and not enough to show substantial and recurring contacts for the education exception to apply. (R. at 184.)

Had the IHO concluded that Plaintiff was a legal resident of Blue Canyon prior to moving to Oakland, California, and failed to apply the "temporarily away" exception while analyzing whether Plaintiff had maintained substantial and recurring contacts, then the Court could find that the IHO decision was arbitrary and capricious. But these are not the facts in the record. Congress did not intend to provide relocation benefits for an applicant who was residing outside an area that was partitioned to a tribe of which he is not a member. *See* 25 U.S.C. § 640d-13; *Walker*, 728 F.2d at 1279. The "temporarily away" exception does not apply because the agency determined Plaintiff was first a legal resident of Tuba City and then of Oakland. The agency thus provided a rational explanation for its residency determination.

Plaintiff also argues that he established dual residency in both Tuba City and Blue Canyon when he left for Chabot College, and that the burden must then shift to ONHIR to establish that Plaintiff intended to abandon his legal residency in Blue Canyon when he left for college. (Compl. ¶ 28; Mot. at 5–6; Doc. 37, Pl.'s Reply at 5, 7–8.) Plaintiff contends that once he established legal residency in Blue Canyon, ONHIR "must rebut Plaintiff's showing." (Pl.'s Reply at 7.) Plaintiff confuses the "legal resident" requirement with the legal term of "domicile," which would require that once the moving party has met its burden, the non-movant must rebut the showing with more than a mere scintilla of evidence. (*See* Pl.'s Reply at 7.)

The Court is not persuaded by Plaintiff's burden-shifting argument because the agency's controlling regulation, 25 C.F.R. § 700.147, does not place a burden on ONHIR to establish Plaintiff's residency. Rather, the burden remains on the Navajo applicant to prove all the eligibility factors, including legal residency of an area partitioned to the Hopi Tribe. *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1123 (9th Cir. 1989) (holding federal law's definition of residency preempts state law and as such the agency regulation controls burden and definition). Even if Plaintiff's burden-shifting argument were controlling, the Court finds that the Agency has provided more than a mere scintilla of evidence showing that Plaintiff was not a legal resident of Blue Canyon prior to moving to California to attend Chabot College.

### B. The IHO Did Not Err in Discrediting Witness Testimony

The Court gives great deference to witness credibility determinations made by an IHO. Like an administrative law judge ("ALJ"), the IHO is in the unique position to witness the testimony at the hearing. *See Sarvia-Quintanilla v. U.S. Immigration & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985) ("[The ALJ] alone is in a position to observe [a witness's] tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness'] testimony has about it the ring of truth."). A court reviewing an IHO's credibility determination will only overturn such a determination where the IHO did not provide specific and cogent reasons supported by substantial evidence to do so. *De Valle v. Immigration and Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990) (citing *Vilorio-Lopez v. Immigration and Naturalization Serv.*, 852 F.2d 1137, 1141 (9th Cir. 1988)). Minor inconsistencies that go to the heart of applicant's claim will support an adverse credibility determination. *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005).

The IHO must provide clear and convincing reasons to discredit witness testimony by specifically identifying the portions of testimony he does not find credible and identifying the evidence that undermines the testimony. *See Parra v. Astrue*, 481 F.3d 742,

749 (9th Cir. 2007). Here, the IHO's decision provides a rational connection between the facts in the record and his written decision. The IHO discredited the following testimonies: Plaintiff's testimony as it pertains to his contacts and visits with Blue Canyon after leaving for Chabot College; Darrell Tso's testimony regarding Plaintiff's return visits from Chabot College; and Tina Coleman's testimony in full. (R. at 181–82.)

In the body of his decision, the IHO provided several explanations supporting his credibility findings. The IHO stated "[t]estimony by applicant and his siblings about extensive visitation to Blue Canyon while applicant was away at college is neither believable or credible." (R. at 184.). The IHO determined that Plaintiff's testimony regarding his contacts and history with Blue Canyon up until he left for Chabot College was credible but that any contacts with Blue Canyon after leaving for Chabot College were only "social and incidental[.]" (R. at 184.) The IHO considered that Plaintiff stated Tuba City was his home, that he only ever voted in Tuba City, and that his wife was from Tuba City. (R. at 181.)

The IHO also noted a discrepancy in Plaintiff's testimony. (R. at 183.) Though Plaintiff testified that Blue Canyon was a "summer home," he testified that when he was a student at Navajo Community College in Tsaile, Arizona from September 1973 to May 1974, he would return to Blue Canyon every two weeks. (R. at 88, 93.) In his testimony, Plaintiff did not clarify or explain his reasons for returning to Blue Canyon during the fall and winter months. The IHO also explained that though Plaintiff testified that he returned to Blue Canyon for livestock maintenance, the Plaintiff also testified that his uncles and cousin cared for the livestock. (R. at 183–84.)

Plaintiff testified that he was "back home in Tuba" in the summer of 1974 after returning from Navajo Community College and before leaving for Chabot College. (R. at 90.) Then in the same sentence, Plaintiff stated, "I was in Tuba City and Blue Canyon attending to the farm and also moving livestock at the ranch." (R. at 90.) When Plaintiff testified that Tuba City was his "home," (R. at 90), and that he "always considered Tuba City his home," (R. at 98), it was reasonable for the IHO to consider Plaintiff's statements

- 10 -

about Blue Canyon as more than minor inconsistencies. But even if Plaintiff's statements concerning Tuba City and Blue Canyon could be considered minor inconsistencies, the Court would still uphold the IHO's decision, because minor inconsistencies that go to the heart of an applicant's claim will still support an adverse credibility finding. *See Kaur*, 418 F.3d at 1064.

The IHO stated, "[Plaintiff's] claim about visiting Blue Canyon during his Christmas vacation during 1974 also fails for the same reasons." (R. at 184.) Those same reasons are that Plaintiff's uncles were caring for any livestock at Blue Canyon and that Blue Canyon was just a "summer home" The Court finds no error in the IHO's credibility determination as to Plaintiff.

Regarding the testimony of Plaintiff's brother and sister, the Court also finds no legal error in the IHO's credibility determination. The IHO provided substantial reasons that their testimony is not credible as to Plaintiff's contacts and visits with Blue Canyon after moving to Chabot College. The IHO discredited the siblings' testimony by stating,

> [A]lthough applicant's sister and brother created a litany of repeated returns to the Reservation while living in California (a one-way distance of 900 miles when applicant didn't have his own vehicle), applicant testified to one return visit in December 1974, both to visit his family in Tuba City and his uncles in Blue Canyon – all for a brief period of time. Testimony by applicant and his siblings about extensive visitation to Blue Canyon while applicant was away at college is neither believable [n]or credible. (R. at 184.)

It was reasonable for the IHO to discredit the third-party testimony based on the lack of corroboration between the testimony of Plaintiff and that of his two siblings. *See Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) ("The arbitrary and capricious standard is highly deferential. [It] presume[es] that agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision").

For example, Tina Tso testified that Plaintiff returned home to the Navajo Nation on several occasions from Oakland, California for "the holidays, Christmas, Thanksgiving, [for] Yabechi [sic] ceremonies[.]" (R. at 127.) However, the only two specific time periods

to which Plaintiff testified to returning home to the Navajo Nation were for Christmas break of 1974 and the summer break of 1975. (R. at 94.)

In addition, Darrell Tso's testimony accounts for many return visits by Plaintiff that are unaccounted for in Plaintiff's testimony. For example, Darrell Tso testified that Plaintiff returned to the Navajo Nation for "Yé'ii Bi Cheii" ceremonies during the winter months, bringing with him items from the coast, like Abalone shells. (R. at 116.) However, absent from Plaintiff's testimony are statements that he participated in the "Yé'ii Bi Cheii" ceremonies, which Darell Tso explained "started in October and they would go into late February, so in those time period[s] he would always come home to try to assist in them[.]" (R. at 116.)

Plaintiff also testified to returning to the Navajo Nation many times but did not provide any specific dates. Nor did Plaintiff provide specific dates for his alleged visits after securing a position with a San Francisco architecture firm in the fall of 1975, which Plaintiff testified allowed him to travel for work on the firm's projects in the area. (R. at 111.) Neither third-party testimony nor employment records corroborates Plaintiff's testimony regarding his return visits on behalf of the firm.

These inconsistencies between Plaintiff's testimony and that of his siblings provided a clear and convincing reason to discredit the siblings' statements. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding that "inconsistencies in testimony" is a factor an ALJ may consider when making credibility determinations). The IHO did not err in discrediting the siblings' testimony because they did not corroborate facts and timeframes in Plaintiff's own testimony. The Court finds that the IHO's credibility determinations for all three witnesses were not arbitrary and capricious and were supported by substantial evidence.

**C. The Court Will Allow Plaintiff to Supplement the Record for the Limited Purpose of Explaining Agency Policy**

Generally, a reviewing court may not consider extra-record documents; however, there are "narrowly construed and applied exceptions," *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005), which permit a court to admit extra-record documents

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Id.* (quotations and citations omitted); *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

Here, Plaintiff argues that the exhibits attached to his Motion for Summary Judgment and his Reply to Defendant's Response and Cross Motion show that the agency's denial of relocation benefits is inconsistent with its past decisions. The Court interprets this as an argument of agency bad faith. (Mot. at 5; Pl.'s Reply at 3, 13.) But Plaintiff fails to carry his burden to show that the exhibits establish agency bad faith. *See Fence Creek*, 602 F.3d at 113 (holding that the party seeking to admit extra-record documents failed to carry its burden "to show that the additional materials sought are necessary to adequately review the [Agency]'s decision").

Exhibits 1 and 2 of Plaintiff's Motion for Summary Judgment and Exhibits 1 through 3 of Plaintiff's Reply to Defendant's Response are five prior written decisions by the IHO and offer only a limited snapshot into the administrative record of those five unrelated relocation benefits cases. *See Whitehair v. Office of Navajo and Hopi Indian Relocation*, No. CV17-08278, 2018 WL 6418665, *3 (D. Ariz. Feb. 1, 2018) (declining to supplement the record to include five "hand-picked sample of cases" in part because they had no precedential value in the present case). The Court will not supplement the record with these exhibits.

As for Exhibits 3 and 4 attached to Plaintiff's Motion for Summary Judgment, the Court finds that they fit within the second and third exceptions of *Lands Council*, which collectively allow the Court to supplement the record to "identify and plug holes in the administrative record." *Lands Council*, 395 F.3d at 1030. Exhibit 3 is a "Report and Plan" prepared by the Navajo and Hopi Indian Relocation Commission—undated and truncated. (Mot. Ex. 3.) Exhibit 4 is a "Plan Update" dated November 22, 1990, prepared by the Office of Navajo and Hopi Indian Relocation. (Mot. Ex. 4). Exhibits 3 and 4 describe the Agency's policy as to individuals being "temporarily away" from the Joint Use Area for education and employment. (Mot. Exs. 3–4.)

The Court has considered Exhibits 3 and 4 for the limited purpose of understanding the Agency's policy and definition of the Agency's technical term—"temporarily away." *See Protect Lake Pleasant, LLC v. Johnson*, No. CIV 07-454, 2007 WL 1486869 (D. Ariz. May 21, 2007) (holding that a court may consider extra-record video testimony for the limited purpose of explaining technical terms and the case's complex subject matter). The Court finds that Exhibits 3 and 4 were created by ONHIR and illustrate the agency's policy as to a person being "temporarily away" from the Joint Use Area. These exhibits helped to identify potential "holes" in the administrative record and informed the Court of the factors used by the Agency in assessing an applicant's claim to being "temporarily away" from the JUA. Because the exhibits are agency-created materials, the Court notes that the agency may have considered these materials either directly or indirectly in its decision denying Plaintiff relocation benefits. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (noting that "all documents and materials" considered by the agency decision-makers, directly or indirectly, are part of the whole administrative record, and not necessarily those documents compiled and submitted by the agency). However, if these materials were not considered by the agency, even indirectly, the Court finds that because Exhibits 3 and 4 were not easily located on the agency's publicly available website, they are a necessary part of the record under the *Lands Council* third exception for the limited

purpose to explain the Agency's technical term—"temporarily away." *See Lands Council*, 395 F.3d at 1030.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant's decision denying relocation benefits to Plaintiff was not arbitrary, capricious, or an abuse of discretion. The decision was made in accordance with law and supported by substantial evidence. Accordingly, the Court affirms the IHO's denial of Plaintiff's application for relocation benefits.

**IT IS THEREFORE ORDERED** affirming the July 29, 2016 decision of the Independent Hearing Officer, (R. at 178–185).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 31).

**IT IS FURTHER ORDERED** granting Defendant's Cross-Motion for Summary Judgment (Doc. 35).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 26th day of April, 2019.

Honorable John J. Tuchi
United States District Judge